We have four cases today for decision. Three are on argument and one of the cases has been submitted on the briefs. Our first case today is BASF Corporation v. Iancu 17-1425. Mr. Desai, did I pronounce your name correctly? I would like to entertain your comments with respect to the Supreme Court opinion and general comments on the applicability of that opinion to IPRs in general and also specifically to this particular case. So what I'd like to do is I'd like to entertain your comments. Be thorough but be kind of brief too. I'm not going to dock your time on the merits of the case but we would like to hear from counsel and we're very interested in your viewpoint. So Mr. Desai, why don't you go first and then we'll ask Counselor Schoenfeld to follow and then we'll get to the merits of the case. Yes, Your Honor. Specifically with respect to the IPRs issue and the case involving BASF, we do not believe that SAS is pertinent to this particular matter because at this point in time the petitioner is no longer involved in this matter and the issue of whether the PTAB should have instituted on all claims or done a partial institution has not been preserved for any type of appeal. So in this particular instance we believe that SAS would not be applicable to this case. However, it is true that in this matter there was a partial institution. When the IPRs were filed, the petitioner challenged all of the claims were instituted but in the, I believe it's the 1124 and the 1125, there was only a partial institution. In Justice Gorsuch's opinion, he talked about the statute and whether to institute an IPR is, as he put it, a binary choice. Either institute or don't. And in that sense, what with respect to all claims. So is there some inconsistency there? Did the board act beyond its authority and is there a question with respect to a lack of finality or with respect to whether this is a justiciable controversy before us? Your Honor, at the time the institution decisions were made, I believe that was how the rules were interpreted. The rules were interpreted that partial institutions were permitted. So at the time the decision was made, we believe it was proper. Yeah, but the Supreme Court said that's wrong. That's wrong. In other words, the Supreme Court I think is saying that what happened in this case shouldn't properly have happened. So where does that leave us? I believe that leaves us with the issue that this issue was never preserved for an appeal by the petitioner in this case. Why would it need to be preserved? Is this a jurisdictional issue we're looking at? To be honest, Your Honor, I'm not entirely sure. From our perspective, the petitions were challenged. The grounds were challenged. At the time they were challenged, it was the patent office's view that they could do partial institutions. That's what occurred. There was never any dispute as to the merits of the institution decisions on that issue and the appeals that are being presently presented to the court. The issue of whether the institution decisions were proper has never I'm wondering if maybe we should, can we think of the issue here with these IPRs and IPR petitions as if the petitioner is almost like a plaintiff in a DJ action trying to invalidate a series of claims in a patent. And then maybe in a DJ action, the district court only resolves some of the validity questions for some of the claims to be invalid. Then the patent owner appeals, but the DJ plaintiff, the petitioner here, drops out. And so even though those patent claims that were not the challenge to those unaddressed claims is likewise gone. This is a rough analogy. I don't know if it works. It seems correct as an analogy because here the only person who was challenging the propriety of these claims was the petitioner and they are no longer a part of this case and no longer challenging the claims anymore. So the issue as to, I think it's a few claims, 9 to 11, and I don't remember the exact claims that were left out. And I apologize. I believe in all of the petitions at issue there was a partial institution. My memory was... Even for the 203 patent? Not for the 203 patent. For the 662. There was a partial institution in the 1121 and 1123 petitions as well as in the 1124 and 1125. But I think that analogy is proper. If not, if it is deemed that these judgments are not final, I believe then the issue would be to remand this and have the board decide the patentability of those claims that were left out. That raises an interesting question because if it's remanded, it goes back and there's no petitioner. This is correct. There is no petitioner. So this is an unusual circumstance. So who's arguing for who against whom? That does present a quandary. But do I understand you correctly that you're not requesting that this court undertake any specific action? That's correct. With respect to SAS. Okay. To be clear. Anything else? No, Your Honor. Okay, let's hear from Counselor Schoenfeld. We agree with what BASF has articulated that here there is no party which is disputing those additional claims. The Patent Office doesn't have an interest in those claims. They're not the ones that filed the petition. The petitioner has dropped out. BASF is not requesting that those claims go back. We do believe it's a waiver issue similar to the Cordes case where intervening law comes along or the DBC. You think a waiver would be necessary in order for us, for this court, to act to send back a particular case? You think that rather that the party would have had to preserve the right for... I think they would have to preserve the right in this case. I mean, following the Cordes case, the intervening law is not, you know, if you don't bring that issue up. And certainly a lot of parties have been preserving the oil states issue. So I think it was on people's minds and aware of it. So I think you can make an analogy to that. There's two lines of questions I think we would have for you. One is the waiver question. The other is the jurisdictional question. Sticking with the waiver question first, is it the agency's view that a party, an appellant, would have to preserve the oil states question? I mean, sorry, the SAS question literally in their briefing? Or given that SAS came out last week, is it the agency's view that a party at this point in time could file perhaps a 28J letter and say, aha, there's been this significant change in law. And so now in light of that significant intervening change in law, I would like the court to send back the case to the board to do a complete IPR on all petition for claims. In light of the recent decision, I'm not sure that the agency is 100% solidified in their position. But I would say that it is the position of the agency that there has been a waiver, if it hasn't been specifically preserved. In the briefing? In the briefing. So if someone didn't raise it until after the SAS opinion last week, then they would be waived? I think so. I think that's fair because I think there was awareness that it was going to be an opinion. Well, in this case, both the green brief and the gray brief were filed after the SAS opinion. Should there have been some sort of mention about SAF at that point? The reply brief, like you mentioned, the reply brief was filed, so it could have been raised in this case as well before there was an awareness. I mean, at that point, I guess you would maybe have to write a letter or raise it in the reply brief. So getting back now to the jurisdictional question, now that we know, thanks to the SAS opinion, that the board's final written decision was really only a final partial decision because it didn't actually resolve the question on the non-instituted but petitioned for claims, does that make the final written decision the board did, the final partial written decision, ultra-virus? I don't think so. There's still a final written decision on the merits of those claims, and there's no question that those claims are finally decided, and there's a decision on the merits which can be reviewed by this court. That would make a review at that point interlocutory, and its profile would be interlocutory, and yet we're prohibited under the AIA to hear any type of interlocutory appeals. I mean, I think this does present a unique situation because we have this going forward, we're going to have a different regime, and currently we have this regime where we have these cases, but I think they can be looked at as almost, if they do go back, and if there is a petitioner that has preserved that challenge and wants to raise that challenge, almost like a new petition. Getting back to waiver, is it your view that only the petitioner can seek a remand because there was only a partial institution, or could either party, either the patent owner or the petitioner at this point, assuming they preserved it in your view, raise this challenge to seek the appeal to be sent back for consideration of the petition for a non-instituted claim? I guess to sum up, is it just the petitioner, or is it either party, the petitioner or the patent owner, that has the right and ability to seek that kind of a remand? I would say either party. I mean, practically speaking, most of the non-instituted claims, I'm not sure the patent owner would want to remand because they're usually not instituted because they're found to be likely patentable or not unpatentable. So I would say, but either party, I think, can raise that issue if they would like to have those claims. You know, if you want like a gold-plated patent and you want those claims re-looked at. So in this case, there's been a settlement. Can you record, do they still have a say as a petitioner? I don't know anything about the settlement, about the details, so I can't speak to that. Do you have a question? Go ahead. Justice Gorsuch again, in his opinion, talked about how during the course of an IPR on the merits, the claims may be amended, so the issues may be changed and don't necessarily, the final opinion doesn't necessarily mirror the petition as filed. There was no discussion about whether the petitioner, during the course of an IPR, could alter the proceeding. And I didn't have the time to check, but can you tell me, does the petitioner have the right during the course of the proceeding to say, well, forget about Claims 9 and 10, I withdraw my petition? Not as far as I know. Once those are instituted on the trial, it goes forth, and certainly they can't amend the claim, so I don't believe the petitioner can change. So the petitioner has control of what would be heard in terms of the initial petition, but not necessarily after that. I think that's correct. Okay. We thank you for your comments. Okay. All right. Let's move to the merits of the case. Mr. Desai, you reserve five minutes of your time for rebuttal. Is that correct? Yes, Your Honor. All right. So you may proceed. Good morning, Your Honors. May it please the Court. The claimed invention in the 662 and 203 patents is directed to a specific zeolite framework, the CHA framework, having a high silica to alumina ratio, SAR, that is combined with copper and is used for a specific process called ammonia SCR of NOx. This was a breakthrough that allowed BSF to commercialize a metal exchange zeolite for treating NOx emissions in diesel engines, despite years of skepticism and efforts by researchers to commercialize a metal exchange zeolite catalyst. So I'm going to begin with the legal error in the 1121 and 1123 petitions that dealt with the combination of Zones and Meshima. In our view, the error here is clear. The Board adopted argument and evidence on a genus species issue that was not found anywhere in the petition or petitioner's reply brief. The Zones plus Meshima petitions presented a single theory of obviousness. Just to confirm something for a second, the last clause of Claim 1 of the 662 patent, the catalyst effective to promote the reaction of ammonia with nitrogen dioxide. Ammonia is not an actual element of the catalyst, right? It's a separate element that is to be used with the catalyst. The ammonia is the reductant in the process. It's not part of the claimed catalyst. It is not. Okay, so the question I have is why is this last clause a limitation that gets patented away if it's not part of, it's not one of the elements of the catalyst? Because I would say, first of all, during the prosecution history, the way the prosecution history was shaped, this claim was amended to overcome prior art by adding that limitation, and therefore I believe the prosecution history indicates that this is considered a limitation. Also, in the IPR proceedings below, there was never any contest as to whether this was a limitation of the claim. I think it was assumed by both parties correctly that it is a limitation. Also, the 203 patent is a method claim. It has different claims that are at issue as well that do require ammonia as a reductant. So if that answers your question, I'll continue. The Zones plus Mayshima petitions presented a single theory of obviousness. The petitioner argued that Zones explicitly discloses using a high-SAR copper chabazite CHA zeolite for ammonia SCR. And then the petitioner argued that it would be obvious to combine that with Mayshima to arrive at the claimed copper to aluminum ranges. This is clear from the petition, the supporting expert declaration, and the board summary of petitioner's argument in the final written decision. You can see that at Appendix 10 for the final written decision. BASF contested that Zones discloses using its high-SAR CHA zeolite for ammonia SCR. Again, this was clear in the Pat Nona response at the oral hearing, and it's also clear from the final written decision at Appendix 12 where the board summarized Pat Nona's arguments. The petition did cite to Mayshima, though, an explicitly quoted passage from Mayshima, describing how Mayshima discloses the idea of doing SCR nitrogen oxides in the presence of ammonia. That is correct. And then the petition also said that the combination of the references has all the limitations and it would be obvious to combine them. That is correct that ammonia SCR is a known process, but the distinction here was it was very crucial to the petition that the high-SAR CHA zeolite used for ammonia SCR was disclosed in Zones. Because even though Mayshima discloses ammonia SCR, it only discloses it with respect to using a low-SAR natural chabazite. So in other words, the petition never explained and never argued the reverse obviousness theory, which is you start with a low-SAR natural chabazite for ammonia SCR, and then you go to Zones and you substitute the high-SAR synthetic zeolite. The petition was focused entirely on the fact that Zones discloses everything except for the amount of copper, and that's what they went to Mayshima for. So this reverse obviousness theory where you start with ammonia SCR in Mayshima simply doesn't work. It was not an argument made in the petition, and there's reasons why you wouldn't be motivated to substitute. We never really got into it because that reverse obviousness theory was never presented in the petition. So I guess the view is that it's not simply enough for an obviousness theory to say, well, I can find ammonia SCR here or here or here or here, because the claims are not to ammonia SCR. So as I understand it, at least with respect to Zones and its discussion of how you use the Zones CHA zeolite to do these reductions of nitrogen oxide, the institution decision makes it clear that when Zones talked about the reduction of oxides of nitrogen, that term, that phrase is understood by those of skill in the art to include ammonia SCR of nitrogen oxides. And it pointed to your preliminary response, which quoted Dr. Zones' declaration as evidence that people would understand the reduction of oxides of nitrogen in Zones to be referring to, among other things, ammonia SCR. Well, two points to make there in response. Of course, the Zones declaration was submitted during a prior re-exam, and Dr. Zones was expressing in that declaration that my patent does not teach specific reactions, that reduction of oxides of nitrogen is a genus, and that's all my patent mentions. Now there are reactions that can fall within this genus, which he was saying, in his view, are within that genus. But, of course, Dr. Zones' declaration never discusses the level of ordinary skill in the art. He never said that this is what a person of ordinary skill in the art would understand. And, importantly, this is not evidence that was ever submitted in the petition or in the petitioner's reply brief. So, in effect, the petitioner objected to Dr. Zones' declaration as not reflecting the understanding of one of ordinary skill in the art. Now, we relied on it for the purpose of showing that reduction of oxides of nitrogen does not equal ammonia SCR. That was a misnomer in the petition, that they had simply assumed that reduction of oxides of nitrogen equals... But what if, to use an analogy, the specification said citrus, right? And then there's a declaration that says, oh, when it says citrus, it's talking about oranges and lemons. And then you come back and say, well, the specification doesn't explicitly say oranges. It merely says citrus. And so, therefore, it doesn't disclose oranges. I'm not so sure that line of argument would prevail if the board makes a finding that says, well, when it says citrus, we have a declaration here that says it includes oranges and lemons. So that seems like substantial evidence to support the idea that when you say citrus, you necessarily encompass the idea of oranges. The issue here, though, is it must be about the understanding of one of ordinary skill in the art. And Dr. Zones did not, in his declaration, address the level of ordinary skill in the art. He was an individual that, with 30 years of experience, 115 patents, who said, in my view, that's how his actual declaration is phrased with respect to the issue of what is encompassed within the phrase reduction of oxides of nitrogen. In my view, these are reactions that can be within that phrase. But he specifically said, my patent does not teach specific reactions. I can't recall. Did you have your expert explain that reduction of oxides of nitrogen, that doesn't include ammonia SCR? We don't dispute that ammonia SCR is within the genus of reduction of oxides. Our position is that it is within the genus. The issue being that in order to establish that in a petition and in a final written decision, you would need certain evidence to support that from the perspective of one of ordinary skill in the art. And that was never made in the petition. There's a decision that we cited, the Wasika Finance case, where it talked about the genus species issues. And it explained the kinds of things you would need to do in order to demonstrate that a person of ordinary skill in the art looking at a genus would pick out the species. An example was you have to explain the size of the genus, whether one of ordinary skill in the art would have immediately envisioned this as being a species within that genus. And that argument and that evidence is completely absent from the petition and the petitioner's reply brief. And it's also absent from the final written decision. So you faulted the board for not considering your argument of this time lapse between the prior art and the claimed invention. But I don't see that you argued that below. So I'd like to know, did you make that argument below or are you presenting it for the first time in your blue brief? And if so, what difference does it make? How does this time lapse theory of yours come within an inquiry into objective indicia? Okay. To answer the first question, we did absolutely make this argument, we believe, in the patent owner response and at the oral hearing. For the patent owner response, it's at appendix 1015-16, 1026-28, and 1037. And in those pages, we talked about the fact that the Meshima reference and the Breck reference, now this is for the other petitions, 1124-1125, that those references were from 1977 and 1985. In the intervening years between 1985 and 2007, there was a substantial number of publications that we put into the record that individuals were struggling and unable to commercialize a metal exchange zeolite. BASF did do that in 2007 with the claimed copper chabazite material. And the point being that if there was skepticism and failure of others to commercialize a metal exchange zeolite, which BASF was able to do in 2007 with the claimed invention, how can you explain the fact that the invention that is commercialized was obvious as of 1985? Just to confirm, this particular argument about old references and passage of time and skepticism of others, this argument on secondary considerations of yours is devoted to the Meshima-Breck combination, not to the Zones-Meshima combination. Correct. Because the Zones reference is a later in time reference, right? It doesn't really apply to that, but it does for the other ones. Okay, you're into a little time and we'll restore some of your time. Thank you. Counselor Springfield. May it please the court. I'll start by responding to the argument about the Zones-Meshima combination. So, counsel conceded that ammonia SCR is a known process. So, you could start with, as the petition did in 294, you have the high SAR from Zones, and then you know to reduce nitrogen oxides, and then based on my Meshima and the other testimony that the board relied on, you would know that reducing nitrogen oxides means that you're going to do those reductions with ammonia. So, the petition, the institution decision, and the board decision all lay out this clear path from Zones to Meshima, which is supported by Zones, reading Zones. One of ordinary skill in the art would understand Zones to speak of ammonia, which is admittedly a known process, or one could look to Meshima and find that one of the ways to reduce nitrogen oxide is to add ammonia. I guess the other side is saying you wouldn't necessarily look at Meshima's disclosure that it was known to do ammonia SCR for reduction of nitrogen oxides, because Meshima's catalyst, zeolite, is somehow different. I can't remember, maybe it's a different pore size, or it's a different SAR, or something like that. And so, you wouldn't necessarily understand reduction of nitrogen oxides in Zones to be referencing ammonia SCR, just because Meshima talks about ammonia SCR. It's a little bit of, it feels a little bit like a revisiting of a motivation to combine argument inside of the question of how to understand this particular phrase in Zones in light of what Meshima's disclosing. What's your response? I would have two responses. A, that's not an argument I believe they made in their blue brief, and B, the board found that there was a reasonable expectation of success when you combine Meshima and Zones. If you look at APPX55, the board devotes three pages to talking about why there would be a reasonable expectation of success in making that combination. So, I don't think that argument, I mean, the board has substantial evidence that considered that argument and rejected it. So, the two patterns at issue here are to a very simple concept. You're using a known catalyst, the zeolite. They're made up of known elements and known quantities, and you're using a known process to remove the nitrogen oxide pollutants from the gases. The claims only require a catalyst which comprises a zeolite with the CHA structure that is effective for ammonia SCR, and that has the broad ratios. With respect to the secondary considerations, the board considered all of the considerations that were before it and also found that there was no nexus and that the claims were not commensurate in scope with the considerations that were provided. So, even if this argument of being old wasn't waived, it was certainly encompassed within the board's findings of that it's not within the claimed scope. So, the way I understand it, the PTO has this alternative argument that Zones by itself meets all the limitations. Is that correct? Correct. Did the board make this finding? Yes. The board... The board never said Zones was a 102, right? Right. It didn't find Zones was a 102 primarily because Zones teaches the copper loading, but it doesn't teach the specific level of copper. So, you need my at least for the copper. The ion exchange ratio. Right. For the ion exchange ratio. Correct. Yes. Thank you. So, you do get a 103, but the board found that if we look at APPX14, Zones did not explicitly list specific reactions. The evidence of record suggested that a person of ordinary skill would understand that to include ammonia, and they cite the Zones declaration. They cite their expert deposition, their expert, the expert testimony deposition, and the transcript of BASF's own admission. So, the board relied on three separate pieces of evidence to show that Zones itself, but then additionally that Myeshma also teaches that. So, it's really, you get it both ways. I'm sorry, Zones by itself meets all the limitations? No, it does not meet all the limitations. It meets the ammonia limitations. Sorry. One of ordinary skill reading Zones would find that one of the reactions that it taught was this ammonia SCR, because that was one of a few known ones. That was, you know, ammonia was well known to use. It's a better reductant. There was Myeshma, I think, itself talks about ammonia being a preferred one to use. So, we have Zones, one of ordinary skill reading Zones would know it, and then also it's in Myeshma. But it's a 103 rejection because of the copper, for sure. So, are there any further questions? Okay. Thank you. Thank you. So, we'll put you at three minutes. Okay. Thank you. Judge Chen, to answer your question about Myeshma, it is a natural chabazite that is disclosed among the list of 11 zeolites. Natural chabazite in the record has a low SAR. The Zones zeolite is a synthetic CHA zeolite that has a high SAR. And that goes exactly to our point that if Zones does not disclose using its high SAR CHA zeolite for ammonia SCR, there is no reverse obviousness theory based on which a person with ordinary skill in the art would start with Myeshma, with a low SAR natural chabazite, and substitute the high SAR CHA zeolite because there is no motivation for that. Myeshma talks about how low SAR zeolites are preferred. And, in fact, the preferred zeolite in Myeshma is an entirely different zeolite. There is no evidence in the record of why someone would reverse. The report says the patent owner is ignoring the full disclosure of Myeshma, which describes pore diameters in a range of about 3 to 15 and then the SAR ratio of above about 2, thereby thus giving Myeshma's disclosure more flexibility and breadth than what you were urging. And that was what the board found. Right. Again, I think this goes back to the issue of what is Zones and what the Zones disclose, because that was the argument that was made in the petition. And the petitioner admitted at the oral hearing that Zones, that no reference, discloses using a high SAR CHA zeolite for ammonia, CR. There was a clear admission, Appendix 253, I believe it is, where the petitioner admitted that my theory in the petition where I said Zones discloses using its high SAR CHA zeolite is wrong. And from there, because the argument in the petition was proven wrong by the petitioner herself, the board could not then pivot to a new argument. And that is the principal issue here on appeal. The issue about the Zones declaration, the deposition testimony, and admission by us about whether Zones discloses ammonia, CR, in our briefs, So to explain, the Zones declaration, as we've discussed, is not about a person of ordinary skill in the art. Second, the Umicore deposition testimony that was cited was never referenced by petitioner in its petition or reply brief. And in that, the expert simply said, well, reduction of oxides is at least these two things, and it actually covers everything, even things that haven't been discovered yet. And that's not substantial evidence of the size of the genus and what's disclosed within that genus. And the last point is we, at the oral hearing, there was never an admission by BSF that Zones discloses ammonia, CR. And that was the very fact that we were contesting. In your view, does the 103 inquiries, in your view, is this the motivation to combine? That's the focus? The issue here is not a motivation to combine on appeal. The issue here is that the petition was premised on an argument that Zones discloses something that it does not. And the petitioner admitted that it does not disclose that. There was never any argument in the petition or the petitioner's reply brief that Zones discloses a genus from which you would pick up the information. To be clear, I understand the petition saying a number of things. One of them is its view that Zones teaches this particular ammonia, SCR limitation. And then the institution decision agreed with that and pointed to the Zones declaration that was quoted in your preliminary response as evidence of that. And then I didn't see in your patent owner response a retort to the institution's decision's conclusion that Zones does, in fact, teach this ammonia limitation in light of the Zones declaration saying that there are five different types of ways of reducing nitrogen oxides, one of them being ammonia SCR. We did dispute in our patent owner response that the Zones reference discloses using its high-sarCHA zeolite for ammonia SCR. And we also pointed out that that same evidence that was submitted in the Zones declaration was submitted in a prior re-exam. And that same evidence resulted in the examiner in that re-exam finding that Zones, this is a quote from the re-examiner, Zones does not teach using its high-sarCHA zeolite for ammonia SCR. We did point that out at the oral hearing and in our reply, in our brief. Okay, you're out of time. Thank you very much.